# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANNY ROMEO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 CV 8703 |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| THOMAS DART, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Danny Romeo ("Plaintiff") sues Cook County Sheriff Thomas Dart and Cook County (collectively, "Defendants") alleging that Defendants discriminated against Plaintiff on the basis of his disability and in violation of the Americans with Disabilities Act ("ADA"). Before the Court is Defendants' Motion for Summary Judgment. The Court concludes that no genuine issue of material fact exists and, as a matter of law, Plaintiff cannot establish an ADA claim. Accordingly, summary judgment is granted in favor of Defendants.

## I. BACKGROUND

The following facts are not in dispute. Defendants employ Plaintiff in the Department of Community Service and Intervention as the Chief of Operations. Plaintiff's job responsibilities entail administrative tasks. Specifically, Plaintiff's vocational duties include providing statistical information for meetings; coordinating lunches, facility and safety protocols, and paperwork between the courts and the facility; and providing daily transportation information. Plaintiff originally worked at Defendants' facility located at 3026 S. California Avenue ("31st Street" or "South Campus"). Plaintiff suffers from Multiple Sclerosis ("MS"), and in 2011, Plaintiff's MS deteriorated to the point that Plaintiff could not walk greater than 50 yards without a cane. By

February 2012, Plaintiff could not move his arms and legs. Plaintiff took medical leave several months thereafter and has been on leave ever since, while also receiving disability benefits from the Cook County Pension Board.

After rehabilitation, Plaintiff regained limited use of his right arm and leg and could again walk up to 50 yards with the use of a cane. In December 2013, Plaintiff formally sought to return to work by sending a letter requesting that the Sheriff "accommodate [Plaintiff] by assigning [Plaintiff] to the Sheriff's Training Academy, located at the South Suburban College, University and College Center, in Oak Forest" because this "would enable [Plaintiff] to drive an extremely short distance to work, and provide [Plaintiff] with a reasonable amount of walking distance at [a] fully handicap accessible location." Pl.'s Res. to Defs.' Statement of Facts at ¶ 17 ("PRDSF"). Between December 20, 2013 and January 10, 2014, Plaintiff and Helen Burke ("Burke"), Chief of Administration, exchanged emails regarding Plaintiff's request. Plaintiff, Burke, and Nancy Bourque ("Bourque"), Chief of the Bureau of Human Resources, met at South Suburban College on January 17, 2014 to discuss Plaintiff's accommodation request. Subsequent to the meeting, Plaintiff mailed a Cook County Sheriff's Office ADA Reasonable Accommodation Form to Defendants. The form explained his difficulty walking and inability to write or type. Plaintiff also stated in his form that the exclusive accommodation he believed he needed to enable his performance of the essential functions of his job was a "fully handicappable [sic] facility." Def.'s Ex. B at 49. On January 24, 2014, Bourque notified Plaintiff that she needed to speak with Scott Kurtivich ("Kurtivich"), the Executive Director of the Training Academy, regarding the minimum requirements to become a Training Instructor. Plaintiff responded to clarify that he would accept a job as a research and development coordinator or curriculum advisor or another similar job. Defendants then inquired with Kurtivich and also

researched whether Moraine Valley or Oak Forest Hospital—locations closer than South Campus to Plaintiff's residence—had vacant positions available to Plaintiff. Defendants concluded that no vacant positions existed for which Plaintiff was qualified at any of the aforementioned locations.

After a follow up email exchange, on February 4, 2014, Bourque and Plaintiff spoke by phone. Bourque informed Plaintiff, and Plaintiff agreed, that he did not qualify for a Training Instructor position. Plaintiff again expressed his desire to become a research and development coordinator or curriculum advisor, but Bourque ultimately informed Plaintiff that Defendants did not have any positions available. During the conversation, Bourque offered Plaintiff the alternative options of returning to 31st Street or transferring to the Daley Center, which the parties agree is fully handicap accessible.[1] Plaintiff rejected the proposed alternatives because "the Daley Center was too long of a drive from his home with traffic and, regarding the South Campus location, he reminded Chief Bourque that it was not handicap accessible." Pl.'s Statement of Additional Facts at ¶ 19 ("PSAF"); PSAF, Ex. 1, Romeo Decl. at ¶ 11; see also PRDSF at ¶ 36.

Following their call, Plaintiff emailed Burke, explaining the conversation with Bourque and reiterating his desire for an accommodation at the previously discussed locations near his home. On February 20, 2014, Bourque sent a letter to Plaintiff again explaining that Plaintiff was not qualified for any positions that met Plaintiff's desired criteria. Bourque noted that she had suggested that Plaintiff return to 31st Street or transfer to the fully handicap accessible Daley Center location.

---

[1] The accessibility statement linked on the Circuit Court of Cook County website confirms that all Circuit Court of Cook County court facilities are ADA compliant. http://www.cookcountycourt.org/HOME/Accessibility.aspx (last visited 11/10/16).

3

Plaintiff filed a charge with the Equal Employment Opportunity Commission on April 28, 2014.[2] However, "[a]t no point did Plaintiff advise Chief Bourque or Chief Burke of a maximum distance in which [sic] he could drive." PSAF at ¶ 26. Defendants never terminated or demoted Plaintiff. Plaintiff also testified at his deposition that "he would have tried to work at the South Campus if [the facility] was fully handicapped accessible and that was the only accommodation. . . ." Id. at ¶ 13.

Defendants now move for summary judgment on the following bases: (1) Plaintiff failed to show a vacancy existed at the particular locations at which Plaintiff desired to work; (2) Defendants provided reasonable accommodations by granting Plaintiff a lengthy medical leave of absence and offering Plaintiff positions at South Campus or the Daley Center; (3) Defendant had no obligation under the ADA to provide an accommodation at the specifically requested locations closer to Plaintiff's home because Plaintiff did not need such an accommodation to perform the essential functions of his job; and (4) Plaintiff's medical leave of absence removed him from the class of qualified individuals as defined by the ADA.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations,

---
[2] This refers to the date of receipt by the EEOC Chicago District Office as stamped on the complaint.

4

weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

## B. Plaintiff's ADA Claim

"Under the [ADA], 42 U.S.C. § 12101 *et seq.*, an employer unlawfully discriminates against a 'qualified individual with a disability' when it fails to make 'reasonable accommodations to the known physical or mental limitations' of the disabled employee, unless to do so would impose an 'undue hardship' on the employer." E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 792 (7th Cir. 2005) (citing 42 U.S.C. §§ 12112(a), (b)(5)(A)). Here, Plaintiff claims that Defendants failed to accommodate his need to drive a short distance to work, his walking distance restrictions, and his compromised limb usage.[3] To oppose Defendants' motion, Plaintiff claims that his requests for reassignment at a location near his home or to be provided full handicap accessibility at his original workplace at 31st Street were reasonable, and that because Defendants did not accommodate either of these requests, Defendants violated the ADA.

## C. Driving as a Major Life Activity

The Court first addresses Plaintiff's contention that his inability to drive long distances is a disability that Defendants must accommodate.[4] The ADA defines "disability" as: "(A) a

---

[3] Because Plaintiff had to rely exclusively on his right arm and leg for balance, Plaintiff required a building "equipped with automatic doors that could be opened with the push of a button with him [sic] hip or shoulder." PSAF at ¶ 5.

[4] The parties do not expressly address whether driving constitutes a major life activity. While a district court generally should not rely on grounds not raised by the nonmoving party in its decision, it may do so if the losing party is on notice that he must come forward with all of his evidence. Cloe v. City of Indianapolis, 712 F.3d 1171, 1182 (7th Cir. 2013) (overruled on other grounds) (citations omitted). Here, both parties make reference to the major life activity standard. Plaintiff specifically enumerates walking and standing, but not driving, Pl.'s Mem. in Opp. at 8, and Defendant alludes to the argument, but cloaks it in terms of the ability to perform the essential

physical or mental impairment that substantially limits one or more of the *major life activities* of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (emphasis added). In cases under the first definition of disability, the Court "conduct[s] a three-step inquiry, asking whether the plaintiff's condition constitutes an impairment under the ADA, whether the activity upon which the plaintiff relies constitutes a major life activity, and whether the impairment substantially limited the performance of the major life activity." Sears, 417 F.3d at 797 (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). The statute explicitly enumerates certain activities such as seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, and working. See 42 U.S.C. § 12102(2)(A). Although driving is not listed, the codified major life activities do not provide an exhaustive list. Id.

The Seventh Circuit, however, has explicitly held that "driving is not, in itself, a major life activity." Winsley v. Cook Cty., 563 F.3d 598, 603 (7th Cir. 2009). Driving can, nevertheless, constitute a major life activity "if it cause[s] an impairment of a major life activity" such as the ability to work. Id. at 604. To demonstrate a "substantial impairment of the ability to work, however, a plaintiff must show that the impairment 'significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes.'" Id. (citing Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir. 1998)). For example, driving may meet the major life activity requirement where an otherwise qualified truck driver can no longer drive a truck. See Powers v. USF Holland, Inc., 667 F.3d 815, 822 (7th Cir. 2011) (citing Best v. Shell Oil Co., 107 F.3d 544 (7th Cir. 1997) ("Best makes clear that truck driving is a class of jobs")). Here, by contrast, Plaintiff's job as Chief of Operations requires administrative capabilities;

---

functions of the job. Def.s' Mem of Law in Supp. of Mot. for Summ. J. at 11-12. As a result, Plaintiff had notice that he needed to establish that driving is a major life activity. This case therefore fits within the exception allowing the Court to enter summary judgment on an issue not explicitly argued.

performance of the essential job functions does not require driving. Plaintiff is not, for instance, a bus driver transporting inmates between the prison and the courthouse. Under Plaintiff's circumstances, driving therefore does not constitute a major life activity covered by the ADA. As a result, Defendants do not bear the legal responsibility to accommodate Plaintiff's request to drive a shorter distance to work.

Even if the ADA recognized driving as a major life activity in the context presented by this case, Plaintiff did not require a shorter drive to perform his job functions. Defendants correctly argue that Plaintiff dooms his argument with his own admissions. First, Plaintiff's official Cook County Sheriff's Office ADA Reasonable Accommodation Form explicitly, and exclusively, identified handicap accessibility as the accommodation needed to perform the essential functions of his job. See Def's Ex. B at 49. Moreover, Plaintiff's brief states that distance was not the dispositive factor in his decision not to return to South Campus. See Pl.'s Mem. in Opp. at 12. Rather, Plaintiff took issue with South Campus's lack of full handicap accessibility and maintains that he would have accepted a job at that location had Defendant offered to install automatic doors. See id. ("If [Defendants had offered to install automatic doors at South Campus], Plaintiff would have accepted that proposal.") If handicap accessibility, not distance, provided the basis for Plaintiff rejecting South Campus, then Plaintiff cannot turn around and argue that he requires a shorter drive to perform his job. Because "the ADA does not require an employer to accommodate disabilities that have no bearing on an employee's ability to perform the essential functions of [his] job, Brumfield v. City of Chicago, 735 F.3d 619, 633 (7th Cir. 2013), Defendant had no obligation to shorten Plaintiff's driving distance.

### D. Reasonable Accommodations

Plaintiff's assertion that he is entitled to relief based on his need for a fully handicap accessible facility in order to accommodate his walking restrictions and exclusive reliance on his right limbs to balance himself fails on a different legal basis. While the ADA does recognize these restrictions as major life activities, Defendants offered reasonable accommodations to aid Plaintiff's restrictions. Defendants argue that they provided Plaintiff with reasonable accommodations by (1) granting Plaintiff a twenty-two month medical leave; and (2) offering to return Plaintiff to a position at South Campus or, alternatively, offering to reassign Plaintiff to the fully handicap accessible Daley Center. The Court agrees that Defendants satisfied their obligation to reasonably accommodate Plaintiff's disability by providing medical leave to Plaintiff and offering Plaintiff a position at the Daley Center.

"It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." Sears, 417 F.3d at 802 (citing Jay v. Intermet Wagner, Inc., 223 F.3d 1014, 1017 (7th Cir. 2000) (internal quotation omitted). Rather, "[t]he duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort." Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 546 (7th Cir. 1995). Otherwise stated, the ADA obliges "an employer to make whatever accommodations are reasonably possible in the circumstances to perform the functions essential to the job." Hoffman v. Caterpillar, Inc., 256 F.3d 568, 577 (7th Cir. 2001) (quoting Miranda v. Wis. Power & Light Co., 91 F. 3d 1011, 1017 (7th Cir. 1996) (internal quotation omitted)).

**1. Medical Leave**

Defendants rely on Seventh Circuit precedent establishing that a medical leave of absence can qualify as a reasonable accommodation. In Basith v. Cook County, the plaintiff ("Basith"), a pharmacy technician, took medical leaves of ten months, one year, several weeks, and five weeks.[5] 241 F.3d 919, 924-26 (7th Cir. 2001). That is roughly the same medical leave time taken by Plaintiff in this case. Basith, in addition to other constraints,[6] had similar walking restrictions to Plaintiff in the case at bar. Like Plaintiff, Basith initially could walk no more than 50 yards at a time. Id. at 924. At other times, Basith was limited to 200 feet of walking at once[7] and, later, "minimal walking." Id. at 925. The Seventh Circuit affirmed the district court on its finding that Basith failed "to show a question of fact existed as to whether he was a 'qualified individual with a disability.'" Id. at 932. However, the court of appeals went on to address the reasonable accommodation issue. The court stated that if it had to reach the issue, "we would still affirm the district court's decision that Cook County accommodated Basith's disability." Id. The opinion reasoned that Basith's medical leave of absence spanned "much of the time at issue in the case," and thus the Seventh Circuit agreed with the district court's finding that Basith's medical leave qualified as a reasonable accommodation. Id. (citing 29 C.F.R. § 1630.2(o)); see also Sneed v. City of Harvey, Ill., 598 F. App'x 442, 446 (7th Cir. 2015) (paid medical leave for entire time plaintiff's PTSD prevented him from performing regular duties may itself have been reasonable accommodation); Goodum v. White, No. 03 C 3257, 2006 WL 566469, at *15 (N.D. Ill. Mar. 3, 2006) (analyzing Rehabilitation Act under same standards as those used for ADA

---

[5] After about five weeks, Basith requested an assignment to a position involving data entry only rather than returning to work as a pharmacy technician. Id. at 926.
[6] Basith's constraints also included restrictions on bending, stooping, crouching, twisting, climbing, squatting, kneeling, lifting, carrying, pushing, and pulling. Id. at 924.
[7] This fact is inferred based upon the parking sticker requested by Basith, which showed that he could only walk a maximum of 200 feet. Id. at 925.

9

claims and finding that a medical leave of absence of more than two years satisfied reasonable accommodation requirement).

Here, the duration of Plaintiff's medical leave, like the leave of absence in Basith, covers "much of the timeframe at issue in the case." 241 F.3d at 932. In particular, Plaintiff's MS restricted to him to walking no more than 50 yards with a cane in September 2011. Roughly five months later, Plaintiff lost use of his limbs and asked to go on medical leave. Defendants granted Plaintiff's request, and Plaintiff has been on leave since. Plaintiff later regained limited use of his limbs and sought to return to work with accommodations on December 20, 2013. On April 28, 2014, Plaintiff filed his complaint with the EEOC. Thus, the timeframe at issue in this case extends at least from September 2011 through April 28, 2014, and Plaintiff was on medical leave for at least twenty-two months of that window.[8] Furthermore, instead of responding to the adequacy of medical leave as a reasonable accommodation or discussing the applicability of Basith, Plaintiff disregards Defendants' argument and merely states that he "fails to see the logic of this argument." Pl.'s Mem. in Opp. at 9. Basith therefore demonstrates the reasonableness of Defendants' provision of medical leave to Plaintiff as an accommodation.

**2. Workplace Accommodations**

Having established that the ADA does not entitle Plaintiff to work at a location close to his home, the Court addresses Plaintiff's objections to the reasonableness of Defendants' proposed workplace accommodations at South campus or the Daley Center. Plaintiff argues that the lack of handicap accessibility at, and not the distance to, the South Campus caused him to

---

[8] Plaintiff's EEOC complaint lists March 26, 2014 as the latest date that discrimination took place, but also checks the continuing action box. Def.'s Ex. B at 49. It appears from the pleadings, however, that Plaintiff has remained on medical leave. See, e.g., PRDSF at ¶ 15; Def.'s Ex. C, Bourque Decl at ¶ 5. Thus, to the extent the timeframe at issue in this case extends further, Plaintiff has still received the accommodation of medical leave during that additional time, so the analysis is unaffected.

reject a return to the South Campus.[9] Viewing the facts in the light most favorable to Plaintiff, he is correct in asserting that Defendants would have run afoul of the ADA by failing to make South Campus fully handicap accessible. However, Defendants offered Plaintiff a reasonable accommodation at the Daley Center. Plaintiff rejected the Daley Center location because it "was too long of a drive from his home with traffic. . . ." PSAF at ¶ 19; Def.'s Ex. B at 52, Romeo Letter to Bourque. This objection fails for several reasons. First, as set forth in detail above, Defendants had no obligation under the ADA to accommodate Plaintiff's request for a shorter drive because driving is not a major life activity in this case.

Second, Plaintiff's Cook County Sheriff's Office ADA Reasonable Accommodation Form specified a fully handicap accessible facility as the sole condition that Plaintiff "believe[d] [was] needed to enable [Plaintiff] to perform the essential functions of [his] job[.]" Def.'s Ex. B at 49. As discussed in the background facts, the parties agree that the Daley Center is fully handicap accessible. Accordingly, Defendants' offer to accommodate Plaintiff at the Daley Center met the exact request Plaintiff set forth in his formal ADA reasonable request form that Plaintiff provided to Defendants.

Finally, Plaintiff's objection to the length of his drive to the Daley Center is in direct contravention of his February 4, 2014 phone call with Bourque in which he stated that distance did not pose an issue for traveling to South Campus. PSAF, Ex. 1, Romeo Decl. at ¶ 11.[10] The

---

[9] Plaintiff does refer to the distance to South Campus in his deposition. Def.'s Ex. A, Pl.'s Dep. Trans. at 72:17-22 ("Because the return to work at 30th and California, it wasn't a handicap-accessible place besides the distance, the travel back and forth. If that was my only – if that was my only option, was to return back to 30th and California, I would have tried to make it and make it work."); Id. at 82:14-20, Ex. 13 ("In addition to the lengthy travel distance . . . [South Campus] is not a fully handicap accessible facility").

[10] See also Pl.'s Mem. in Opp. at 12 ("If distance were the dipositive issue for [Plaintiff], then why did Plaintiff always mention the handicap accessibility of the location when discussing the South Campus. Plaintiff emphasized the handicap accessibility issue, as opposed to the distance issue . . . If [Defendants had offered to install automatic doors at South Campus], Plaintiff would have accepted that proposal.") (emphasis in original); Pl.'s Mem. in Opp. at 2-3, 6, 10, 12 ("All Defendant would have had to do is install automatic, push-button doors at the building's side

Daley Center is nearly the same distance from Plaintiff's hometown as South Campus, and the travel route involves the same major highway.[11] Defendants therefore offered Plaintiff a job at a reachable location with the handicap accessibility needed—and specifically requested by Plaintiff—to address Plaintiff's difficulty walking and compromised limb usage. Thus, Defendants did what was necessary to enable Plaintiff to work in reasonable comfort at the Daley center.

Defendants had no duty to provide a different accommodation that Plaintiff may have suggested or preferred, since the Daley Center accommodated Plaintiff's disability. See Sears, 417 F.3d at 802 (stating it is the employer's prerogative to choose a reasonable accommodation and such accommodation need not be the particular accommodation the employee requests); Basith, 241 F.3d at 932 (county had no duty to provide different proposed accommodation where clean air room assignment accommodated plaintiff's disability); Gile v. United Airlines, 95 F.3d 492, 499 (7th Cir. 1996) (employer need only provide some reasonable accommodation and need not provide the requested or preferred accommodation); Bunn v. Khoury Enters., Inc., 753 F.3d 676, 683 (7th Cir. 2014) (where the employer provided a reasonable accommodation, the plaintiff's "apparent displeasure with the way in which [the employer] decided on that accommodation, or with its failure to provide the exact accommodation he would have preferred, [was] irrelevant") (citation omitted).

---

entrance and in one of the building's bathrooms and Plaintiff could have been accommodated"; due to inability to walk more than 50 yards and exclusive reliance on right limbs, Plaintiff required automatic doors).

[11] According to Google Maps, the drive from Oak Forest, Plaintiff's hometown, is essentially the same distance to the South Campus as to the Daley Center. Google Maps estimates the drive from Oak Forest to the Daley Center to be 25.2 miles and 39 minutes. The drive from Oak Forest to South Campus is 26.5 miles and 33 minutes. Both routes involve the same major highway, I-57.

## III. CONCLUSION

Under the undisputed facts presented by this case, the ADA does not recognize driving as a major life activity. Defendants additionally met their obligation to reasonably accommodate Plaintiff's walking limitations and compromised usage of his limbs by providing medical leave and offering Plaintiff employment at a fully handicap accessible facility. As a result, the Court need not address the parties' arguments regarding whether a vacancy existed at Plaintiff's preferred locations and Plaintiff's status as a qualified individual under the ADA. Nor does the Court reach Plaintiff's contention that Defendants failed to sufficiently engage in the interactive process because Defendants did not fail through the interactive process to determine actions necessary to provide a reasonable accommodation. See Rehling v. City of Chicago, 207 F.3d 1009, 1015-17 (7th Cir. 2000), amended (Apr. 4, 2000). Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 18, 2016